**Billie P. JONES, formerly Billie P. Schellenberger, Administratrix, etc., Plaintiff-Appellee,**

v.

**James A. SCHELLENBERGER, Defendant-Appellant.**

**No. 11321.**

United States Court of Appeals Seventh Circuit.

Sept. 6, 1955.

785

William C. Wines, Chicago, Ill., for appellant.

Edward H. Enright, Herman Herson, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, MAJOR and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

The plaintiff, formerly Billie P. Schellenberger, widow of Ralph D. Schellenberger, Texas administratrix of his estate and a citizen of Texas, brought this suit in the Northern District of Illinois against the defendant, James A. Schellenberger, a citizen of Illinois, brother of Ralph surviving partner of an automobile retailing partnership which was dissolved by Ralph's death, for an accounting with respect to the affairs of the firm.

Ralph D. Schellenberger died July 1, 1945, and the complaint was filed October 14, 1948. Defendant's answer to said complaint was filed November 10, 1948, to which was attached a copy of the articles of co-partnership entered into between the decedent and the defendant, dated December 10, 1937.

After prolonged litigation, including two previous appeals to this court, 196 F.2d 852, and 201 F.2d 29, with numerous references to a Master, a decree was entered September 27, 1954, approving in the main the report and supplemental report of the Master, dated respectively June 10, 1953 and August 21, 1953, in which it was adjudged and decreed that the plaintiff have and recover from the defendant the sum of $268,049.13, to-

gether with certain specified interest and costs. From this decree defendant appeals.

The partnership agreement set forth in detail the rights, duties and obligations of the partners, including the following provisions:

> "It is further agreed that the party of the first part and the party of the second part shall both and each of them participate and own the said business and partnership jointly as joint tenants with the right of survivorship, and upon the death of either party hereto, all right, title and interest therein shall vest immediately unto the surviving partner.
>
> \* \* \*
>
> "In case of the death of either partner, the whose of the assets or effects of the said partnership shall accrue immediately to the surviving partner."

(The instant controversy turns upon the effect to be given to this language, which will subsequently be referred to as the "survivorship provision.")

The sole reason urged for reversal is that by the "survivorship provision" all of the partnership property at the time of the decedent's death passed to the defendant and he became the sole owner thereof. This, so it is asserted, constitutes a bar to plaintiff's cause of action and requires a reversal with directions to dismiss the complaint. Defendant, in support of this contention, relies almost exclusively upon a decision of an Illinois Appellate Court, Lynch v. Ilg, 348 Ill.App. 545, 109 N.E.2d 362 (hereinafter referred to as the Lynch case), in which the Illinois Supreme Court, on January 15, 1953, denied leave to appeal, 413 Ill. 633. It appears that the Lynch case is the first and only decision by an Illinois court construing and sustaining a partnership "survivorship provision." Defendant has attached to his brief a copy of the Lynch decision, it being reported only in abstract form.

This court, in an opinion rendered May 26, 1955, affirmed the judgment appealed from on the basis that defendant by his acts and conduct had waived the right to invoke the defense based upon the "survivorship provision." Such being our conclusion, we thought it unnecessary to consider or determine whether the rule announced in the Lynch case was applicable. We have, on this petition for rehearing, reached the conclusion that our previous decision was erroneous. That decision, therefore, and all orders entered pursuant thereto are vacated and set aside.

While we need not offer any excuse for reaching what we now think was an erroneous conclusion, it is perhaps pertinent to note that we labored under the impression that the Lynch decision was not called to the attention of the Master or the District Court. In fact we stated, "Another indication that defendant by his then counsel recognized that the present issue had been either waived or finally adjudicated resides in the fact that the Illinois Appellate Court decision now so heavily relied upon, rendered almost two years prior to the decree appealed from, was not cited or called to the attention of the District Court." This erroneous statement, relied upon to fortify our conclusion that the defendant had waived the survivorship defense, was due to the fact that we examined only the printed record, which did not contain either the Master's report or the opinion of the District Court rendered on defendant's objections to the Master's report and upon which was predicated the decree from which the appeal comes. However, the original transcript of the record contains a copy of the Master's report and the opinion of Judge Campbell, together with the decree. Both the Master's report and the court's opinion disclose that the survivorship issue was heavily relied upon by the defendant and that it was thoroughly considered, discussed and decided adversely to the defendant. Moreover, plaintiff did not raise before the Master or the District Court the issue of waiver by defendant. As a matter of fact, no such issue was raised by the plaintiff in

this court, although it was incidentally referred to in her brief.

As already noted, the defendant attached the partnership agreement to his answer to the complaint and made it a part thereof. On April 5, 1950, the District Court allowed plaintiff's motion to strike that portion of the agreement relating to the survivorship defense and in so doing stated:

"Having, therefore, established that the Act [Illinois Partnership Act] mandatorily creates a tenancy in partnership, it still remains to be determined whether or not a tenancy in partnership and a joint tenancy with right of survivorhsip may mutually co-exist. That proposition must be answered in the negative for the reason that the most fundamental distinguishing element of the former is that there is no right of survivorship."

After reference to and report by a Master, the matter again came before the court on objections to the Master's report, and a decree was entered September 20, 1951. This decree contains numerous findings and conclusions relative to the partnership agreement and the relation which existed between the defendant and the decedent. It recited:

"That this Court, by an order entered on to-wit: April 5, 1950, had stricken from the defendant's answer the affirmative defense relating to partnership joint tenancy and right of survivorship because, the right of joint tenancy and the right of survivorship in partnership assets and property may not mutually co-exist by reason that the most fundamental distinguishing element of the tenancy in co-partnership is that there is no right of survivorship."

The decree provided:

"That James A. Schellenberger, defendant, be and he is hereby required to account to said Billie P. Jones, formerly Billie P. Schellenberger, as Administratrix of the Estate of Ralph D. Schellenberger, deceased, on account of the partnership existing between said Ralph D. Schellenberger, deceased, during his lifetime, and said James A. Schellenberger, to the date of said account.

"That the cause be referred to Joseph F. Elward, a Master in Chancery, for the taking of an accounting of the partnership dealings by the said parties."

In the view which we now take of the case, it appears unnecessary to make a detailed statement either of the issues or facts which gave rise to the previous appeals to this court. Briefly, it is sufficient to note that subsequent to April 5, 1950, when the District Court first expressed the view that the "survivorship provision" constituted no defense, and prior to that court's decree of September 20, 1951, in which it was held as a matter of law that its previous ruling on that point was res adjudicata, the defendant employed an attorney and through him procured the issuance of letters of administration in the Probate Court of Cook County, Illinois, upon the estate of Ralph D. Schellenberger, his deceased brother and partner. The administrator thus appointed on December 19, 1950 filed his appearance in the District Court and moved that he be substituted as a party-plaintiff. The court on the recommendation of a Master to whom the matter had been referred denied the motion for substitution, whereupon the Illinois administrator appealed to this court, which affirmed. 196 F.2d 852.

On April 29, 1952, while the appeal lastly discussed was pending in this court, plaintiff filed in the District Court a petition for the appointment of a receiver to take charge of the partnership assets and for the issuance of an injunction to restrain their disposition by the defendant. Defendant filed an answer denying petitioner was entitled to the relief sought, largely on the basis that only complete relief could be obtained by the parties, including the rights of creditors and heirs in the Probate Court of Cook County, Illinois. The matter was

referred to a Master, whose report recommending that the relief be granted was approved by the District Court over defendant's objection. The decree of approval was entered August 8, 1952, and recited in detail the proceedings which had theretofore been had. Among other things the decree stated:

"That on September 20, 1951, a decree was entered by this Court, wherein and whereby it was provided that plaintiff, Billie P. Jones, formerly Billie P. Schellenberger, as administratrix of the Estate of Ralph D. Schellenberger, deceased, was entitled to an accounting from defendant, James A. Schellenberger, as to the assets of a certain partner-, ship * * *."

Not only was the defendant by the decree enjoined from further disposing of partnership assets but he was directed to "immediately set over, transfer, assign and deliver to said Receiver any and all cash, credits, debts, effects, and other assets of every kind of the late partnership * * *." The court, referring to the issues previously raised by the defendant, including the survivorship issue, again concluded as a matter of law:

"* * * these issues were resolved against Defendant by this Court's decree of September 20, 1951. Defendant has not appealed from that decree; it is res adjudicata, and these questions are no longer open to defendant."

Defendant appealed from this decree, which was affirmed by this Court, 201 F. 2d 29. The defendant did not, in either of the previous appeals to this court, attempt to obtain a ruling upon the validity of his survivorship defense.

Following our decision in the second appeal, the Master conducted a hearing on accounting and made a report finding the issues for plaintiff and recommending the judgment now under attack. As previously stated, Judge Campbell, on objections to the Master's report, filed an opinion in which he set forth the issues for decision, which he discussed in detail. He stated the issues thus:

"(1) Is the prior decree of September, 1951 (finding that plaintiff had a right and defendant had a duty to account) res adjudicata?

"(2) Is plaintiff's demand for an accounting barred by the survivorship clause of the partnership contract?"

The parties in this court state the contested issues in substantially the same form, except the res adjudicata issue has been narrowed to include only the question as to whether the decree of September 20, 1951 was final and res adjudicata as to the "survivorship provision." On both issues plaintiff, of course, argues in the affirmative and defendant in the negative.

The sole relief sought by the plaintiff, as stated in her complaint, was:

"That an account may be taken of all and every the said partnership dealings and transactions from the time of the commencement thereof, and also an account of the moneys received and paid by the plaintiff and defendant respectively in regard thereto.

"That the defendant, James A. Schellenberger, may be decreed to pay to the plaintiff what, if anything, should, upon taking said accounts, appear to be due her."

Defendant by his answer denied "that plaintiff's intestate is entitled to an accounting of the moneys received by this defendant in the course of the business heretofore operated as a partnership." Thus, the issue raised by the pleadings which has persisted throughout the proceeding is whether the plaintiff is entitled to an accounting. The defendant from the beginning has denied liability because of the "survivorship provision" contained in the partnership agreement. (Other defenses were invoked which have been abandoned on this appeal.)

In our original opinion, in view of our conclusion that the defendant was barred

from raising the survivorship defense on this appeal, we found it unnecessary to decide the issue as to the finality of the decree of September 20, 1951, or whether it was res adjudicata. In the situation as now stated, however, we think it should be decided. Also, in our original opinion we held that the defendant had a right to appeal from the decree of September 20, 1951, on the issue of the survivorship defense, not because the decree was final but because an injunction was allowed, and that such defense, if sustained, as a matter of law would have constituted a bar not only to the issuance of an injunction but to all relief sought by the plaintiff. Under the view which we now take, this issue as to whether the defendant had a right to appeal under the stated circumstances becomes immaterial. On the question of res adjudicata, the Master and the District Court relied chiefly upon Delta Drilling Co. v. Arnett, 6 Cir., 186 F.2d 481, certiorari denied 340 U.S. 954, 71 S.Ct. 574, 95 L. Ed. 688. Plaintiff in this court further cites Rubert Hermanos, Inc., v. People of Puerto Rico, 1 Cir., 118 F.2d 752; Kasishke v. Baker, 10 Cir., 144 F.2d 384, and Altschuler v. Altschuler, 399 Ill. 559, 78 N.E.2d 225, 3 A.L.R.2d 333. On the other hand, defendant cites and relies upon a number of cases, the more important of which are Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169; Guarantee Co. of North America v. Mechanics' Savings Bank & Trust Co., 173 U.S. 582, 19 S.Ct. 551, 43 L.Ed. 818, and the recent case of Baltimore Contractors, Inc., v. Bodinger, 348 U.S. 176, 75 S.Ct. 249.

We shall not analyze or discuss more than a few of the cases for the reason that the Latta case, the rule of which so far as we are aware, has not been deviated from, conclusively demonstrates that the decree of September 20, 1951, or any other decree rendered previous to that under attack, was not final, and was not appealable on the basis of finality. In its review of the facts, the court in the Latta case stated 150 U.S. at page 525, 14 S.Ct. at page 202:

"The appellees, as members of a dissolved copartnership, brought this suit against the appellant, another member thereof, for an account of profits made by the latter in certain transactions alleged to have been within the scope of the partnership business, and which, as claimed, it was his duty to have conducted for the benefit of the firm instead of for his individual advantage."

The defendant in that case defended on the grounds that the transactions upon which the plaintiffs relied were not within the scope of the partnership agreement and for that reason plaintiffs were not entitled to an accounting. There, as here, nothing was sought other than an accounting for profits alleged to have accrued under and by terms of the partnership agreement. (We are not overlooking that the instant plaintiff also sought and procured the issuance of an injunction and the appointment of a receiver. This action, however, did not result in affirmative relief to the plaintiff; it had no effect other than to preserve the status quo of the situation until it could be determined whether plaintiff was entitled to the relief sought.) And the defense in both cases was that the plaintiff was not entitled to an accounting under the provisions of the partnership agreement.

In the Latta case it was held that plaintiffs were entitled to recover certain profits from the partnership and an accounting was decreed against the defendant. Thereupon, the cause was referred to an auditor to take proofs and state an account. In compliance with this decree the auditor conducted hearings and made a report which found that the defendant was liable to plaintiffs. Exceptions to this report were overruled and a decree was entered, from which the appeal was taken. Plaintiffs attacked the appealability of the latter decree on the grounds that the former decree was final and that an appeal could have been taken only from that decree. The court in de-

nying this contention stated 150 U.S. at page 539, 14 S.Ct. at page 207:

"We are clearly of opinion that this proposition cannot be sustained. It is well settled by the decisions of this court that where the purpose of the suit is to obtain an account, such as that prayed for by the bill in this case and directed by the order of October 27, 1886, the decree is of such an interlocutory character that no appeal will lie therefrom. [Citing cases.]"

Thus, the Latta case squarely holds that in a suit for partnership accounting, a decree deciding that transactions are within the scope of a partnership, rejecting argument to the contrary and directing the taking of an accounting, is not final and appealable and, therefore, not res adjudicata. Finality is achieved only after an accounting has been taken and the result embodied in a decree.

It is true that in some of the cases relied upon by plaintiff, a decree entered before an accounting had been taken was held to be appealable. It will be found, however, that in all of such cases the decree directing an accounting and held to be appealable awarded to the plaintiff and against the defendant other affirmative relief which could be realized and enjoyed prior to the taking of an accounting. Delta Drilling Co. v. Arnett, 6 Cir., 186 F.2d 481, in which a decree directing an accounting was held to be final and appealable, is typical. In that case the decree awarded immediate possession to the plaintiff of certain real estate, which award was not dependent upon the accounting which was to follow. Kasishke v. Baker, 10 Cir., 144 F.2d 384, is another of plaintiff's cases where a decree was held to be final and appealable although it also included directions for an accounting. There, however, as the court stated referring to the decree, page 386:

"It definitely fixes the rights of the parties in and to certain specific property. It provides as to that question it is final. It directs the defendants to execute and deliver to plaintiff proper conveyances of an undivided 1/10th interest in the described oil and gas leases. If the defendants fail to execute the conveyances the decree itself shall operate as such conveyance. Nothing could be more complete."

We conclude that the Master and the District Court were in error in deciding that the decree of September 20, 1951 was final and appealable or res adjudicata on defendant's survivorship defense. Furthermore, we seriously doubt if a ruling even though final can become res adjudicata so as to bar its further consideration in the course of the same proceeding.

In Southern Railway Company v. Clift, 260 U.S. 316, 319, 43 S.Ct. 126, 67 L.Ed. 283, the court, with reference to a prior ruling in the same case, stated:

"The prior ruling may have been followed as the law of the case, but there is a difference between such adherence and res judicata. One directs discretion; the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission."

In Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152, the court stated:

"In the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. [Citing cases.]"

■ Furthermore, it is the duty of federal courts at any stage in the course of a proceeding to give effect to state law. In Huddleston v. Dwyer, 322 U.S. 232, 236, 64 S.Ct. 1015, 1018, 88 L.Ed. 1246, the court quoted from its previous decision in Vandenbark v. Owens-Illinois Co., 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327, as follows:

" 'Until such time as a case is no longer sub judice, the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court.' "

Under this pronouncement it appears plain that a District Court as well as this court is obligated to give effect to any change in state law made during the course of a proceeding, and we perceive no reason to doubt but that the obligation persists even though it requires further consideration of a question previously decided by a decree which under some circumstances may be regarded as final.

This brings us to the second issue, that is, whether plaintiff's demand for an accounting is barred by the survivorship clause of the partnership contract. A solution of this issue requires the answers to two questions, (1) Must the pronouncement in Lynch v. Ilg, 348 Ill. App. 545, 109 N.E.2d 362, a decision by an Illinois Appellate Court, be accepted as the law of the state? and (2) If so accepted, is the ruling in that case applicable to and controlling in the instant situation? Both of these questions were decided adversely to the defendant by the Master and by the District Court. As already noted, the decision in Lynch was rendered in the interim between the decree of September 20, 1951 and that now under review. For this reason plaintiff contends that the decision cannot control because of its retroactive effect. In Huddleston v. Dwyer, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246, a question of state law, that of the state of Oklahoma, was involved. The question was decided by the District Court, which decision was affirmed by the Court of Appeals for the Tenth Circuit, 137 F.2d 383, both the District Court and the Court of Appeals having decided the question on what was determined to be the rule of the state. A petition for rehearing was denied. Subsequently, a second petition for rehearing was filed in which the attention of the court was called to a decision of the Supreme Court of Oklahoma, which had been rendered between the time of the filing of the first and second petitions for rehearing, in which that court decided the issue contrary to the decisions of the federal courts. The Supreme Court (U.S.) reversed the judgment of the Court of Appeals, with directions that it reconsider its decision in the light of the recent pronouncement of the state Supreme Court.

In discussing the duty of the federal courts to follow and apply state law, the court in the Huddleston case, 322 U.S. at page 236, 64 S.Ct. at page 1018, stated:

"State law is the controlling rule of decision in this case as to both substantive and procedural rights of the parties. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188; Federal Rules of Civil Procedure, rules 69(a), 81(b), 28 U. S.C. following § 723c, 28 U.S.C.A. following section 723c. It is the duty of the federal appellate courts, as well as the trial court, to ascertain and apply the state law where, as in this case, it controls decision. Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, [88 L.Ed. 9]. And a judgment of a federal court ruled by state law and correctly applying that law as authoritatively declared by the state courts when the judgment was rendered, must be reversed on appellate review if in the meantime the state courts have disapproved of their former rulings and adopted different ones."

Thus, here is a clear holding that it is the duty of the federal courts at any stage in the course of a proceeding, even after denial of a petition for rehearing in the Court of Appeals, to follow, if applicable, a state court decision although rendered subsequent to the rendition of judgment by a federal court.

More than that, there is no longer room to quibble as to the effect which must be given to a decision of an intermediate state court. In West v. Ameri-

can Telephone & Telegraph Co., 311 U. S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, the court stated:

> "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. [Citing cases.] This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."

As already noted, the Supreme Court in the Lynch case, on January 15, 1953, denied leave to appeal, 413 Ill. 633. Thus, the Lynch decision constitutes "a datum for ascertaining state law" and is more persuasive for the reason that "the highest court has refused to review the lower court's decision." Also, the Supreme Court of Illinois in Walters v. Walters, 409 Ill. 298, 305, 99 N.E.2d 342, 346, stated:

> "The denial of leave to appeal, then, attests that this court thought the result was correct and proper under the facts there presented."

Both this court in Ballard v. Citizens Cas. Co. of New York, 196 F.2d 96, 100, and the Third Circuit in McLouth Steel Corp. v. Mesta Machine Co., 214 F.2d 608, 610, following the decision in West, applied the law as announced by an Illinois Appellate Court as the law of the state.

■ While subsidiary issues were discussed and commented upon in the Lynch case, the ultimate question decided was that a partnership agreement which provided that a surviving partner take all the assets of a partnership, free of any claim of the deceased partner's personal representative, was valid in Illinois. The District Court cited and discussed a number of Illinois cases from which it concluded that there was "persuasive evidence" that the Illinois Supreme Court when presented with the same question would reach a different result. We have read these Illinois cases but find no such "persuasive evidence." We are unable to agree with this conclusion of the District Court, particularly in view of the fact that the Supreme Court by its denial of leave to appeal "thought the result was correct and proper under the facts there presented." It is our view the holding in Lynch must be accepted as the substantive law of Illinois on the question decided. That leaves for further consideration the important question as to whether the rule thus announced is applicable to and controlling of the instant situation.

Preliminary to that discussion, it appears pertinent to make brief reference to the Uniform Partnership Act of Illinois, Rev.Stat.1951, Chap. 106½ § 7 et seq. Section 25(1) provides: "A partner is co-owner with his partners of a specific partnership property holding as a tenant in partnership." Section 25(2) (d) provides: "On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose." Section 31(4) provides that dissolution of a partnership is effected "by the death of any partner." Section 43 provides: "The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary."

There is no material difference in the provisions of the partnership agreement in the Lynch case and those here, other than a difference in phraseology as to the

right of the surviving partner to take the partnership property. The Lynch agreement provided that upon the death of a partner the survivor should become "the sole owner of the entire partnership business and assets, * * * without any obligation of any nature to pay the estate, executors or heirs of the deceased partner any consideration therefor, it being the intention that the death of a partner shall immediately terminate all right, share, interest and privilege of such deceased partner, his heirs, executors, administrators or assigns in and to said business, partnership and concern and all the assets thereof, as completely to all intents and purposes as if he or she had never been interested therein, and the surviving partner shall have all and every right of sole ownership thereof and therein * * *."

The agreement in the instant case provided: "It is further agreed that the party of the first part and the party of the second part shall both and each of them participate and own the said business and partnership jointly as joint tenants with the right of survivorship, and upon the death of either party hereto all right, title and interest herein shall vest immediately unto the surviving party," and "In case of the death of either partner the whole of the assets or effects of the said partnership shall accrue immediately to the surviving partner."

In the Lynch case the court stated (opinion not published):

"Ilg as surviving partner held title to the partnership property subject to the provisions of Sec. 25 (2) (d) of the Act. There was no title in the decedent. The effect of the agreement set forth was merely to waive the right to an accounting, which the estate of decedent would otherwise have. A contract made between living persons upon good consideration even though the contract provides as one of its terms that title to property shall pass to another upon the death of one of the parties to the contract, is recognized in Illinois. [Citing cases.] Ilg,

by performing his part of the contract and managing the business throughout the life of the partnership, furnished the full stipulated consideration for his acquisition of the partnership assets. * * * We are of the opinion such provision is expressly recognized and authorized by the Act and is not in violation of the Joint Rights and Obligations Statute."

In our view, the language employed by the Schellenbergers clearly evidences an intent on their part that a surviving partner should become the owner of the partnership property. Was the language employed sufficient to accomplish that purpose? Some confusion is engendered by the provision that they should own the said business and partnership "jointly as joint tenants with the right of survivorship." In fact, the court's decree of September 20, 1951 recited, "The right of joint tenancy and the right of survivorship in partnership assets and property may not mutually co-exist by reason that the most fundamental distinguishing element of the tenancy in co-partnership is that there is no right of survivorship." That court, however, in its recent opinion places no reliance upon, in fact makes no mention of its earlier pronouncement in this respect. At any rate, we do not regard it as a valid basis for a denial of the survivorship defense. It is evident that the agreement is one in partnership and not joint tenancy. Not only did the partners characterize and recognize it as such, but it has been continually so recognized by the parties and the court in the course of this prolonged litigation. In fact, the decree under attack is predicated solely on the basis that plaintiff is entitled to an accounting because her deceased husband was a member of the partnership. Moreover, plaintiff in her brief argues and cites numerous cases in support of the contention that "the laws of Illinois cannot be made to define the contractual relationship referred to above as anything different than a situation of partnership, from which an accounting—so

794

bitterly contested and withheld—must proceed." Defendant concedes that the agreement is one in partnership and not joint tenancy. Such being the situation, we think that the words, "as joint tenants," are devoid of any legal significance. The agreement concededly being one in partnership, the question is whether it as such provides for the right of survivorship.

■ It is suggested that the survivorship language in the instant agreement effected nothing more than would have been effected by the statute in the absence of such language. It is true, of course, that Sec. 25(d) provides, "On the death of a partner his right in specific partnership property vests in the surviving partner", but the same section also provides, "Such surviving partner * * * has no right to possess the partnership property for any but a partnership purpose." The issue here is concerned with property of the partnership generally and not with specific partnership property. Thus, it appears that defendant as the surviving partner, in the absence of agreement, would have been entitled to nothing more than possession, and only for partnership purposes. By agreement, however, the survivor not only acquired possession of the partnership property but all "right, title and interest," with the further provision that in case of the death of either partner "the whole of the assets or effects of said partnership shall accrue immediately to the surviving partner." In our judgment, it was not only clearly intended by the partners that the survivor was to become the owner of the partnership property but that apt language was employed to accomplish that purpose.

It is further suggested, in an attempt to distinguish the agreement in the instant case from that in Lynch, that in the latter the surviving partner was specifically relieved of the obligation to account to the decedent's heirs. That provision, however, has no bearing other than as it may indicate the intent of the partners, which in the instant case is clear without such a provision. The de-

fendant having acquired all "right, title and interest" in the partnership property, the law relieves him of the obligation to account.

Other minor differences between the two agreements are suggested but, even so, we cannot escape the conclusion that the law as announced in the Lynch case must be given effect. Such being the case, plaintiff was not entitled to the relief sought and the decree appealed from must be reversed.

■■ Finally, there is the question of the taxation of costs in this prolonged and vexatious proceeding. Rule 54(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides that costs shall be allowed "to the prevailing party unless the court otherwise directs", and Rule 24(a) of this court contains substantially the same provision. Under these rules, federal courts have a wide discretion in the apportionment and taxation of costs. In our judgment this discretion should be exercised to its fullest extent both by this and the District Court against the defendant, even though he now becomes the prevailing party. We entertain this view because defendant's conduct toward both the plaintiff and the court can be appropriately characterized as reprehensible. Typical of such was his procurement of the appointment of an Illinois administrator who sought leave to be substituted as a party-plaintiff. We have no doubt but that this was a maneuver by which the defendant sought to procure an adversary under his control. See Jones v. Schellenberger, 7 Cir., 201 F.2d 29, 30. His conduct has not only prolonged the litigation but has greatly increased the costs.

Defendant's counsel, who has represented him only on this appeal, appears to sense the situation. His petition for rehearing contains the following headnote, "Any actual imposition upon Mrs. Schellenberger because of reversal by this Court can be corrected by this Court's or the District Court's apportionment of costs." The petition continues: "* * * if this Court feels that she has been substantially prejudiced by the

expense incidental to the defendant's appeals from the interlocutory orders or has otherwise suffered because this litigation has been unnecessarily protracted, it is within this Court's power to rectify that injustice by apportionment of the costs, expenses and attorneys' fees, including the taxing of all of the expenses of the receivership and such other items as may appear to the Court to be just, against the defendant." We appreciate this candid concession on the part of defendant's counsel. In our view, defendant should be required to pay all costs and expenses incurred in this proceeding, and all costs in this court are taxed to him. We think the taxation of costs other than those incurred in this court is a matter for the District Court.

The decree appealed from is reversed and the cause remanded, with directions that the complaint be dismissed upon payment by the defendant of the costs taxed in this court and those which have or may be taxed against him in the District Court.